UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, a minor, David Piquette and Debra Piquette, as Grandparents and Legal Guardians of Minor Child Jane Doe, <br><br> Plaintiffs, <br><br> v. <br><br> BELCHERTOWN PUBLIC SCHOOLS and BUREAU OF SPECIAL EDUCATION APPEALS, <br><br> Defendants. | Case No. 3:16-cv-30189-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFFS'
MOTION TO SUPPLEMENT AND MOTION FOR MISCELLANEOUS
RELIEF– MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD
(Dkt. Nos. 25, 46)

ROBERTSON, U.S.M.J.

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Jane Doe ("Jane" or "Plaintiff"), by and through her grandparents and legal guardians, Debra Piquette ("Jane's grandmother") and David Piquette ("Jane's grandfather") (collectively, "Jane's grandparents" and, with Jane, "Plaintiffs"), seeks judicial review of a September 23, 2016 decision by the Massachusetts Bureau of Special Education Appeals ("BSEA"). Jane contests the BSEA conclusion that during the 2014-2015, 2015-2016, and 2016-2017 school years, Belchertown Public Schools ("BPS") offered Jane an Individualized Education Plan ("IEP") reasonably calculated to afford Jane a free appropriate public education ("FAPE") as required by the IDEA. Jane also seeks reimbursement of the funds expended by her

grandparents for her education at Wilbraham Monson Academy ("WMA"), where they unilaterally placed Jane in October 2014 at their own expense.

Plaintiffs have filed two motions to supplement the administrative record pursuant to 20 U.S.C. § 1415 (i)(2)(c)(ii) (Dkt. Nos. 25, 46). Plaintiffs seek to add (1) a report of psychological, speech and language, and educational testing of Jane that occurred after the BSEA hearing and decision, (2) a report regarding a visit by Jane to the emergency room that occurred several months before the BSEA hearing, (3) two letters from June 2010 regarding agreements between BPS and Jane's grandparents relative to their sons' Individualized Education Programs (IEPs), which purportedly included reimbursement payments by BPS to the Piquettes for payments made to WMA; and (4) an affidavit from Debra Piquette regarding a payment she made to WMA after the BSEA hearing. BPS and the BSEA (collectively, Defendants") oppose Plaintiffs' motion, with the exception of the affidavit from Debra Piquette, which only BPS opposes. For the reasons that follow, the court DENIES Jane's motion without prejudice to Jane filing a renewed motion seeking to supplement the record with a revised affidavit that responds to the concerns raised by BPS in its opposition.

**I.     Background**

   A. The Existing Record

On April 30, 2014, Jane, a special education eligible student who was receiving services under an IEP, met with her IEP team to prepare for the 2014-2015 school year (Dkt. No. 4-5 at 4-6). At the time, Jane was finishing up her eighth-grade year at Curtis Blake Day School, a private, out-of-district day school focused on teaching students with learning disabilities (*id*. at 5). Following the meeting, BPS offered an IEP calling for Jane's placement in a substantially separate program at Belchertown High School for the 2014-2015 school year (*id*. at 6). Jane's

2

grandmother rejected the proposed IEP and placement, and requested a team meeting to discuss the rejection (*id*. at 7). BPS, after learning that Curtis Blake Day School would not have a ninth grade class for the 2014-2015 school year, offered White Oak School as a "stay-put placement" pending resolution of the parties' dispute (*id*. at 8). On September 2, 2014, Jane began attending ninth grade at White Oak School (*id*.).

In mid-September 2014, BPS personnel conducted psychological and speech and language evaluations of Jane, and a team meeting was held on September 24, 2014 to go over the results of the assessments (*id*. at 9-10). Shortly thereafter, on October 6, 2014, Jane's grandparents unilaterally enrolled Jane in WMA, effective October 20, 2014 (*id*. at 12). The following day, October 7, 2014, BPS forwarded an IEP to Jane's grandparents offering Jane placement at White Oak School for the 2014-2015 school year (*id*. at 11). Jane's grandmother accepted the IEP, but rejected the placement at White Oak School, and, on October 10, 2014, Jane's attorney informed BPS of Jane's grandparents' unilateral placement of Jane at WMA (*id*. at 11-12). BPS advised Jane's grandparents that it would not fund Jane's placement at WMA (*id*. at 12). Nevertheless, Jane left White Oak School on October 17, 2014, and began attending classes at WMA on October 20, 2014, where she completed her ninth grade year (*id*. at 12-13).

On August 14, 2015, Jane's grandparents advised BPS that they would continue Jane's unilateral placement at WMA for the 2015-2016 school year and noted that they would be seeking retroactive reimbursement for the placement (*id*. at 14). BPS again advised Jane's grandparents that it would not fund Jane's unilateral placement at WMA (*id*.). On September 22, 2015, a team meeting was held, following which BPS forwarded Jane's grandparents a proposed IEP offering Jane a partial inclusion program at Belchertown High School for the 2015-2016 school year (*id*. at 14-15). While Jane's grandparents took no action on this IEP, Jane's father

3

rejected it, and Jane continued to attend WMA for the remainder of her tenth grade year (*id*. at 15).

On December 22, 2015, Jane's grandparents filed a Hearing Request with the BSEA (*id*.). In April and May 2016, BPS personnel conducted psychological and speech and language reevaluations of Jane (id. at 16-17). On May 26, 2016, a team meeting was held, and BPS issued a proposed IEP again offering Jane a partial inclusion program at Belchertown High School for the 2016-2017 school year (*id*. at 18). Jane's grandparents did not respond to the proposed IEP (*id*. at 19).

The BSEA hearing was conducted over several days in June and July 2016, and the BSEA issued its decision rejecting Jane's appeal on September 23, 2016 (*id*. at 1-2, 32). BPS's 2014 and 2015 psychological and speech and language evaluations are part of the record, and the clinician who performed the psychological evaluations for BPS in 2014 and 2016, Dr. Joseph Silverman, Ph. D., NCSP, testified at the hearing (*id*. at 9, 16-17). Jane and her grandparents did not present any expert opinion at the hearing.

B. Jane's Subsequent Withdrawal from WMA

After the BSEA issued its decision, in October 2016, Jane's withdrew from WMA and enrolled in TEC Connections Academy Commonwealth Virtual School ("TECCA"), which is its own public school district and local educational agency ("LEA") responsible for providing special education services to its students (Dkt. No. 39).

C. Proposed Additions to the Record

Plaintiffs seek to supplement the record with the following documents:

(1) A 26-page written report of psychological, speech and language, and educational testing conducted on Jane between December 2016 and April 2017 by four clinicians employed by Learning Solutions for Learning Success, LLC (Dkt. No. 46-2).

4

(2) A four-page record documenting a visit by Jane to the emergency room on January 31, 2016 for a head injury, as a result of which she was diagnosed with a concussion (Dkt. No. 46-3).

(3) Two "To Whom It May Concern" letters, both dated June 25, 2010, regarding IEPs for the Piquette's sons and providing as follows:

> [BPS] has entered into an agreement with Debra and David Piquette who will be providing a home program for their son, [NAME REDACTED], for school year 2010-2011. This agreement provides for contractual obligations that the Piquettes enter into in order to meet the goals and objectives on their son's IEP. It is our understanding that the Piquettes have chosen to have educational services provided to [NAME REDACTED] by staff at Wilbraham and Monson School. The Piquettes will pay the school directly for any services provided for their son. Belchertown Public Schools will reimburse the Piquettes for bills related to school year 2010-2011 after the start of fiscal year 2011 (July 1, 2010). The current projected total for services provided by the staff at Wilbraham and Monson is $36,315.[1]

The letters are signed by Patricia W. Susen, who is identified as the BPS Director of Special Education (Dkt. No. 46-4).

(4) An affidavit from Jane's grandmother attesting that Jane was enrolled at WMA in the fall of 2016, that Jane's grandparents paid WMA $3,780.00 on August 23, 2016, and that Jane's grandparents withdrew Jane from WMA after the BSEA decision was issued because they could no longer afford to make payments (Dkt. No. 46-5).

II.  Applicable Legal Standards

In judicial review of administrative decisions under the IDEA, Congress has provided that a reviewing district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court deems is appropriate." 20

---

[1] The letters are identical with the exception of the redacted names.

5

U.S.C. § 1415 (i)(2)(C). Notwithstanding the ostensibly mandatory language of the clause, the First Circuit has held that the determination of what additional evidence may be admitted is left to the sound "discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984), *aff'd on other grounds*, *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). To this end, in *Town of Burlington*, the court held that the word "additional" should be construed "in the ordinary sense of the word … to mean 'supplemental.'" *Id*. at 790. The court provided a non-exhaustive list of reasons why supplementation might be appropriate in any given case, including "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id*.

In *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983 (1st Cir. 1990), the court reiterated this approach and provided additional guidance to the district courts in the exercise of this discretion.

> [A] party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so. …. To determine whether this burden has been satisfied …. [a] district court "should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources."

*Id*. at 996 (quoting *Town of Burlington*, 736 F.2d at 791).

**III.    Analysis**

　　A. <u>Learning Solutions Assessment</u>

The court finds that the Learning Solutions assessment is not "additional" evidence as the word has been construed by the First Circuit.  Plaintiffs do not offer the assessment to supplement the existing record, but rather to refute the expert testimony in it.  That this is so is revealed by Plaintiffs' asserted reasons why the assessment should be added to the record, namely (1) to demonstrate that Jane was making progress at WMA, contrary to the hearing officer's conclusion, (2) to "provide[ ] insight into Dr. Silverman's evaluation and testimony that was not brought to the hearing officer's attention by omission of Dr. Silverman," including Jane's personal and family history of dyslexia, and (3) to present a "more comprehensive evaluation" than Dr. Silverman's (Dkt. No. 47 at 3-4).  Plaintiffs could have presented expert testimony at the administrative proceeding to effectuate any of these purposes, but failed to do so.  To permit them to introduce conflicting expert opinion at this stage would impermissibly allow them to "change the character of the hearing from one of review to a trial *de novo*."  *Town of Burlington*, 736 F.2d at 791.  This is of particular concern in light of the fact that the assessment does not speak for itself, but rather, for it to be of value to the reviewing court, it would require expert testimony to explain it and place it in context.  *See A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp. 2d 152, 172 (D. Conn. 2006) ("[T]o be truly useful to the Court, any records submitted would have to be explained and placed in context.").

In addition, contrary to Plaintiffs' position, the Learning Solutions assessment does not fall into the category of "relevant events occurring subsequent to the administrative hearing." *Town of Burlington*, 736 F.2d at 791.  While the testing was conducted after the BSEA hearing, it was conducted more than five months later and during a portion of the 2016-2017 school year

7

that is not under consideration, as, by the time of the testing, Jane was enrolled in and attending TECCA. *See, e.g. Roland M.*, 910 F.2d at 992 ("An IEP is a snapshot, not a retrospective. In striving for 'appropriateness,' an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated."). Thus, the Learning Solutions assessment is not relevant to the issues under consideration, namely whether the 2014-2015, 2015-2016, and 2016-2017 IEPs were reasonably calculated to provide Jane with FAPE as required by the IDEA and whether Plaintiffs are entitled to reimbursement for their unilateral placement of Jane at WMA for those years.

Finally, Plaintiffs do not offer a solid justification for its admission into the record. Plaintiffs argue that admission of the assessment is proper because it did not exist at the time of the hearing, and it was "impossible" for Plaintiffs to have obtained an independent evaluation for use at the hearing (Dkt. No. 47 at 4). The court disagrees. Jane's grandmother requested a hearing in December 2015, and the hearing did not begin until June 2016. Plaintiffs had ample opportunity to obtain an assessment for use in the hearing. Instead, Plaintiffs decided not to present any expert testimony at the administrative hearing and now apparently regret that decision. That does not equate to a solid justification.

    B. <u>January 31, 2016 Emergency Room Notes</u>

The court likewise finds that the emergency room notes are not "additional" evidence as the word has been construed by the First Circuit, nor have Plaintiffs met their burden of providing a solid justification for admitting them. As Plaintiffs acknowledge, the notes existed at the time of the BSEA hearing, and they could have sought to introduce them into the record at that time (*id*. at 5). Plaintiffs claim that that the relevance of the notes did not "accrue" until after the hearing concluded. The court is not persuaded. Plaintiffs acknowledge that there was

testimony at the hearing that Jane had suffered a head injury in January 2016, demonstrating that whatever relevance they believe the head injury has to the issues under consideration was apparent at the time. Further, to the extent Plaintiffs believe the existence of the head injury undercuts Dr. Silverman's testimony or conclusions in some way, they could have inquired of him about it on cross-examination.

      C.  <u>June 25, 2010 Letters Regarding Debra and David Piquette's Sons IEPs</u>

Plaintiffs' weakest argument for supplementation of the record is in connection with the two To Whom It May Concern Letters regarding Jane's grandparents' sons' IEPs. The letters do not, as Plaintiffs claim, demonstrate that BPS "has established a practice of placing special education students at WMA for the purpose of meeting those students' IEP goals and objectives" (*id*. at 6). At best, the unauthenticated, unsworn letters might be used to establish that seven years ago, BPS agreed to reimburse the Piquette's for payments they made to WMA to obtain educational services in connection with their home-schooling of their sons, evidence that would have no bearing on any of the issues presented in this case. Plaintiffs also claim that "[b]ecause the other (male) students placed at WMA by Belchertown were similarly situated as [Jane] in their learning disabilities and IEP goals and objectives, omission of this evidence undermines the fundamental principles of fairness and has even a tinge of unlawful (gender) discrimination" (*id*.). There is no evidence in the record that the Piquette's sons were similarly situated to Jane, and the letters do not bear the weight of a claim of unlawful gender discrimination. Finally, Plaintiffs offer no justification for their failure to seek to admit the letters into evidence at the administrative hearing.

9

D. Affidavit of Debra Piquette

Plaintiffs' strongest argument for supplementation relates to the affidavit of Debra Piquette attesting that Plaintiffs paid $3,780.00 to WMA on August 23, 2016. This payment post-dates the hearing and, so, could not have been admitted into evidence at the hearing. Moreover, Plaintiffs seek reimbursement for WMA tuition for the 2016-2017 school year. To the extent that this payment reflects a tuition-related payment, it would be relevant to what damages could be awarded if the BSEA hearing decision is reversed. The BSEA does not oppose admission of the affidavit, but BPS objects to it on the grounds of sufficiency. Specifically, while acknowledging that an affidavit documenting the amount of tuition Plaintiffs actually paid to WMA for Jane for the 2016-2017 school year would represent proper supplementation, BPS notes that the current affidavit does not establish that the $3,780.00 payment was for tuition for the 2016-2017 school year. The court agrees and directs Plaintiffs to submit a revised motion to supplement the record with an affidavit from Debra Piquette responding to these concerns.

E. Conclusion

For the reasons stated above, Plaintiffs' motions to supplement (Dkt. Nos. 25, 46) are DENIED without prejudice to Plaintiffs filing a renewed motion to supplement with a revised affidavit from Debra Piquette addressing Plaintiffs' payments for WMA tuition for the 2016-2017 school year, responding to the concerns raised by BPS in its opposition.

It is so ordered.

Dated: August 28, 2017                     /s/ Katherine A. Robertson____
                                           KATHERINE A. ROBERTSON
                                           United States Magistrate Judge