UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, a minor, DEBRA PIQUETTE and DAVID PIQUETTE, <br><br> Plaintiffs, <br><br> v. <br><br> BELCHERTOWN PUBLIC SCHOOLS and BUREAU OF SPECIAL EDUCATION APPEALS, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 16-30189-MGM <br> * <br> * <br> * <br> * |

MEMORANDUM AND ORDER ON PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT

(Dkt. Nos. 57, 60, & 63)

November 13, 2018

MASTROIANNI, U.S.D.J.

I.   INTRODUCTION

Jane Doe ("Student") and her grandparents and legal guardians ("Grandparents" or, separately, "Grandmother" or "Grandfather") (collectively "Plaintiffs") have brought this suit pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against co-defendants, Belchertown Public Schools (the "School District") and the Massachusetts Bureau of Special Education Appeals ("BSEA"). Pending before the court are cross-motions for summary judgment. Plaintiffs had counsel for the proceeding before the BSEA. They filed this action *pro se* and then obtained new counsel shortly before summary judgment motions were filed. The court held a hearing on the parties' cross motions for summary judgment January 12, 2018. During that hearing, counsel for Plaintiffs advanced several new arguments and requested the

opportunity to file supplemental briefing. Over objections from Defendants, the court allowed the request. Plaintiffs filed their supplemental memorandum and Defendants responded. The court now considers the original and supplemental filings.

Plaintiffs challenge the September 23, 2016 decision by a BSEA hearing officer denying Plaintiffs' request for retroactive reimbursement and prospective payment of expenses incurred for Student to attend Wilbraham Monson Academy ("WMA") during the 2014-2015, 2015-2016, and 2016-2017 school years. The hearing officer determined the Individualized Education Plan ("IEP") proposed by the School District for each year was reasonably calculated to provide Student a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"), as required under the IDEA, and that WMA was not an appropriate placement for Student. Plaintiffs ask the court to conclude the offered IEPs were insufficient and either that the WMA placement was appropriate or that Student is entitled to a compensatory education award. Alternatively, Plaintiffs ask the court remand the case back to the BSEA for further hearing regarding Student's educational needs and/or the regarding the cumulative harms of procedural violations found by the hearing officer. Plaintiffs also seeks an award of attorney's fees for the attorney expenses associated with the BSEA appeal. The School District and BSEA ask this court to affirm the September 23, 2016 BSEA decision and deny attorney's fees because Plaintiffs do not qualify as prevailing parties.

## II.   BACKGROUND

A.   <u>Educational History</u>

Student attended a public elementary school operated by the School District until third grade, when she was found eligible to receive special education services to address a language-based learning disability. The School District developed an IEP for her and, consistent with that IEP, placed her at Curtis Blake Day School ("Curtis Blake") a private, out-of-district, special education

school. At Curtis Blake, Student participated in an intensive integrated language based program. Student remained at Curtis Blake through the end of eighth grade (the 2013-2014 school year).

During her five years at Curtis Blake, Student made "commendable academic gains," especially during her final year when she progressed from a third grade reading level to an emergent seventh grade reading level. On April 30, 2014, Student's special education team ("Team") met to consider her IEP for the period from May 22, 2014 through May 21, 2015. During that meeting Student and Grandparents expressed a desire for Student to attend high school at WMA, a private, general education, college preparatory high school. Student was familiar with WMA because other family members had attended the school. She indicated she wanted to attend WMA so she could access more challenging academics, typical peers, and extracurricular activities. Staff from Curtis Blake who attended the meeting expressed concern about placing Student at WMA because the school did not offer the type of special education curriculum offered at Curtis Blake. They worried about Student's ability to progress academically without access to the types of instructional methods offered at Curtis Blake. Neither Curtis Blake staff nor staff from the School District supported Student's choice of placement. At the time of the meeting, all parties believed Student did not need a new placement because she could remain at Curtis Blake for ninth grade. Although Student was fourteen years old at the time of the meeting, the Team did not discuss establishing a transition plan for Student.

Following the April 30, 2014 Team meeting, the School District offered Student an IEP placing her in an unnamed "substantially separate program" within Belchertown High School ("BHS"), the public high school operated by the School District. The BHS program was not discussed at the Team meeting and Student and Grandparents were surprised by the proposed placement. Student and Grandmother observed the program and concluded it would not be appropriate for Student for several reasons including the level of noise and lack of structure in the

classroom and their assessment that the academic program was not sufficiently challenging to prepare Plaintiff for a four year college and career in health care. Grandmother rejected the proposed IEP and requested a Team Meeting. She later wrote a letter to the Massachusetts Department of Elementary and Secondary Education ("DESE"), complaining about the School District's unilateral decision to change Student's placement from an out-of-district placement to an in-district placement. The dispute over the proposed IEP caused Curtis Blake to become Student's stay-put placement. Curtis Blake later announced it would not be offering a ninth grade program during the 2014-2015 school year and, therefore, could no longer be Student's stay-put placement.

Counsel for Grandparents wrote to the School District and requested WMA as an alternative stay-put placement, asserting any alternative stay-put placement should be at a private school. In response, the School District proposed White Oak School ("White Oak") as a substitute stay-put placement. Like Curtis Blake, White Oak is a DESE-approved private, special education school serving students with language-based learning disabilities. Student's family agreed that White Oak would be designated the new stay-put placement.

Student began attending White Oak on September 2, 2014. Within a short time, Student was unhappy with the placement. She believed the curriculum was not sufficiently rigorous to prepare her to attend a four-year college. The lengthy commute—White Oak is over an hour from Student's home—prevented her from participating in extracurricular activities. Student also felt isolated and unsafe with some of the other students. At the BSEA hearing, Student reported hiding in the bathroom with another girl in order to avoid certain boys during the period between arriving at school and the start of the school day. Student's discomfort appears to have been related to a significant gender imbalance among the students at White Oak. Of the nine ninth graders who began the 2014-2015 school year at White Oak, seven were boys and two were girls. Both Student and the other girl left White Oak without completing the 2014-2015 school year.

During September Student participated in testing at White Oak and with a school psychologist and a speech and language pathologist both employed by the School District. Following that testing, a Team Meeting was held on September 24, 2014. Student attended that meeting and expressed her continued to desire to attend WMA. Student also shared her dissatisfaction with White Oak, but without raising specific concerns related to safety or the impact of safety concerns on her ability to learn.

After the Team Meeting, the School District drafted a new IEP for Student. Pursuant to the new IEP Student was to continue attending White Oak. The new IEP also included a Transition Planning Form which described Plaintiff's goal to complete high school in June of 2018, then attend a four-year college as a residential student, and to work in the medical field on a part-time basis while in college and full-time after graduating. The associated Action Plan identified supports to help Student reach the goals set out in the Transition Planning Form.

On October 8, 2014, Grandmother accepted the IEP, but rejected the placement at White Oak. At that time she requested a meeting to discuss the location for delivery of services. Two days later, Grandparents' attorney notified the School District they would be placing Student at WMA because they believed such a placement to be the most appropriate for Student. The School District responded on October 15, 2014 to acknowledge the unilateral decision to place Student at WMA, reiterate the opinion of the School District that White Oak was the most appropriate placement for Student, and confirm that School District would not pay for a placement at WMA.

Student began attending WMA on October 20, 2014. She remained there for the rest of the 2014-2015 school year. During that time, her academic performance fluctuated. Despite putting in substantial effort, Student received a warning letter from the WMA academic review board in February of 2015. Several months later, at the end of the 2014-2015 school year, Student's reports

indicated that her academic performance was improving. Her final grades for ninth grade included a C- in English and Algebra 1, a D+ in Global Studies, and a D in Physics.

Prior to the start of the 2015-2016 school year, Grandparents informed the School District of their intention to continue Student's placement at WMA and to seek retroactive reimbursement for the placement. On September 22, 2015, Student's Team conducted its annual IEP review. Student, her father, Grandmother, and an educational advocate all participated in that meeting via conference call together with staff from WMA. Those participating in the meeting agreed Student would benefit from more academic support. WMA agreed to: provide Student with accommodations through a Student Learning Plan which set out special teaching strategies to be implemented in reading, writing, and math; give Student access to assistive technology, extended time, breaks, no spelling penalties, and, at the discretion of the teacher, access to a scientific calculator during assessments; and provide trained special education teachers to work with Student for approximately two hours per week.

The 2015-2016 IEP offered by the School District changed the Student's placement from White Oak, which was no longer a stay-put placement, to the Language Learning Program ("LLP"), the same partial inclusion program at BHS, Student and Grandmother had visited at the end of the 2013-2014 school year. The Service Delivery grid of the proposed IEP included a fifteen minute weekly consultation with a Speech and Language pathologist and almost twenty hours per week of instruction with a certified special education teacher or paraprofessional. The IEP included a Transition Planning Action Plan identical to the one in the 2014-2015 IEP offered in October of 2014. Grandmother and Student visited the LLP again in November of 2015. After that visit, Plaintiffs filed their request for a hearing with the BSEA.

B. <u>The BSEA Hearing and Ruling</u>

After Plaintiffs requested the BSEA hearing and before the hearing took place, the School District conducted psychological and speech language reevaluations of Student during April and May of 2016. The School District also held a Team meeting and issued a proposed IEP for the 2016-2017 school year. The proposed IEP again offered Student a placement in the LLP. Grandparents did not respond to the proposed IEP. The hearing was held over the course of four days during June and July of 2016 and the parties submitted written closing arguments in August.

Staff from the School District, White Oak, and WMA all testified during the hearing, as did Student and members of her family. The headmaster of White Oak described the program offered there and testified that White Oak was able to provide the services set out in the 2014-2015 IEP proposed in the fall of 2014. School District staff provided similar testimony related to the LLP and the services set out in the 2015-2016 and 2016-2017 IEPs. Student and members of her family testified that White Oak and the LLP did not provide academically challenging instruction and could not meet her needs. Plaintiffs did not call any educators as expert witnesses to testify about shortcomings in the design or implementation of the programs offered by White Oak or the LLP that would have prevented them from providing the services set forth in the IEPs.

The BSEA issued its decision on September 23, 2016, finding Grandparents were not entitled to retroactive reimbursement or prospective payment of the expenses of Student's enrollment at WMA because the IEP proposed in the fall of 2014 for the 2014-2015 school year and the IEPs proposed for the 2015-2016 and 2016-2017 school years were reasonably designed to provide Student with FAPE. Additionally, the hearing officer concluded that even if one or more of the IEPs had been inadequate, WMA did not offer an appropriate placement for Student. The Hearing Officer also found the School District had failed to follow federal and state law and regulations when (1) Student and Grandparent were not told about the possible LLP placement or

7

given an opportunity to discuss the placement at the Team meeting in April of 2014; (2) the IEP offered after the April 2014 Team meeting did not include a Transition Plan; and (3) the Transition Plans in later IEPs lacked appropriate specificity. However, the hearing officer concluded the first violation was adequately cured when Student was placed at White Oak and the second violation was cured when a Transition Plan was provided as part of the IEP proposed in the fall of 2014. As to the Transition Plan deficiencies, the hearing officer ruled they were insufficient to render the IEPs offered by the School District inappropriate because Student had not participated in any of the programs offered by the School District. The BSEA did, however, order the School District to convene Student's Team to revise the Transition Plan to better address Student's specific goals.

After the BSEA decision was issued, Student withdrew from WMA and enrolled at TEC Connections Commonwealth Virtual School ("TECCA"). As a Commonwealth virtual school, TECCA became responsible for providing prospective special education services to Student during her enrollment. *See* MASS. GEN. L. ch. 71, § 94(h). Student did not remain at TECCA. Instead, she completed her final year of high school at Pope Francis High School, a private, general education school.

### III.   SUBJECT MATTER JURISDICTION

Plaintiff filed this appeal of the September 23, 2016 BSEA ruling on December 16, 2016, pursuant to 20 U.S.C. § 1415(i)(2), which permits "any party aggrieved by the findings and decision" made by the BSEA to bring a civil action in United States District Court within ninety days of the date of the BSEA decision. December 16, 2016 was within the ninety-day period. This court, therefore, has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

IV. LEGAL STANDARD

"[A] motion for summary judgment in an IDEA case is simply a vehicle for deciding the relevant issues[;] . . . the non-moving party is not entitled to the usual inferences in its favor" and summary judgement is not precluded where there is a dispute as to issues of fact. *Sebastian M. v. King Philip Regional Sch. Dist.*, 685 F.3d 79, 84-85 (1st Cir. 2012). Instead, the "court's principal function is one of involved oversight." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 93, 989-90 (1st Cir. 1990). In addition to considering the administrative record, the IDEA provides that the court shall consider additional evidence at the request of a party and base its decision on the preponderance of the evidence. *Id.*; 20 U.S.C. § 1415(i)(2)(c). At the same time, the court is required to "give due deference to the findings of the [BSEA] hearing officer." *Sebastian M.*, 685 F.3d at 85. In order to balance these somewhat contradictory directives, the court must be mindful that its job is not to "impos[e] [its] view of preferable educational methods upon the States." *Board of Educ. v. Rowley,* 458 U.S. 176, 203 (1982)

In this case, the court must determine whether the BSEA ruling was erroneous. *See Sebastian M.*, 685 F.3d at 86. The court must consider whether the 2014-2015, 2015-2016, and 2016-2017 IEPs proposed by the School District were reasonably calculated to provide FAPE to Student and, if the court disagrees with the hearing officer's conclusion, it must then consider whether WMA was an appropriate placement for Student. Additionally, the court must consider whether the BSEA rulings regarding the procedural violations related to the creation of the April, 2014 proposed IEP and whether the insufficiency of the Transition Plans incorporated into later proposed IEPs were sufficient to confer prevailing party status on Plaintiffs, such that they would be entitled to reimbursement of the attorney's fees they incurred before the BSEA.[1]

---

[1] In a May 5, 2017 electronic order denying the School District's Motion to Dismiss Plaintiffs' claim for attorney's fees, this court wrote that "the record does not support a finding [Plaintiffs] were prevailing parties before the BSEA." The court addresses the request for attorney's fees more fully below.

V.   THE IDEA

"Congress designed the IDEA as part of an effort to help states provide educational services to disabled children." *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008). Under the IDEA school districts have "an obligation to provide an adequate and appropriate education," but are not compelled "to afford a disabled child an ideal or an optimal education." *Id.* A school district meets its obligation to provide each disabled student with a FAPE "as long as the program that it offers to a disabled student is 'reasonably calculated' to deliver 'educational benefits.'" *Id.* School districts must also ensure they provide disabled students with FAPE in the LRE, which means a school district should place a student in "the least restrictive educational environment that will accommodate the child's legitimate needs." *Id.* at 285.

Under the IDEA, the IEP is the vehicle school districts use to ensure students are provided with FAPE in the LRE. 20 U.S.C. §§ 1412(a)(3)-(4), 1414(a)-(b). An IEP meets the requirements of the IDEA if it is reasonably calculated to provide FAPE in the LRE. *See Lt. T.B. ex rel N.B. v. Warwick Sch. Comm.*, 361 F.3d 80, 83 (1st Cir. 2004). "The development of an IEP is meant to be a collaborative project" between a student's parents and educational professionals working on behalf of the school district. *Five Town Cmty. Sch. Dist.*, 513 F.3d at 285. When the collaborative process is unsuccessful, the IDEA empowers parents to challenge either the school district's efforts to create the IEP or the IEP itself. 20 U.S.C. § 1415. This adversary process begins with a due process hearing before a hearing officer and can continue to include judicial review of the hearing officer's decision. *Id.* Generally, when a hearing officer or court assesses the adequacy of an IEP, they do not "judge[] exclusively in hindsight" because an IEP is considered to be "a snapshot, not a retrospective." *Roland M.*, 910 F.2d at 992. "[T]he IEP must take into account what was, and was not, objectively reasonable" when the IEP was prepared and it is inappropriate to judge whether the IEP was

reasonably calculated to provide FAPE in the LRE using information that only became available after the IEP was promulgated. *Id.*

When a school district is unable to provide FAPE to a student, the IDEA may require the school district to pay for the student to attend a private placement. *Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 15 (1993). Parents who are dissatisfied with an IEP offered by a school district may unilaterally choose a different placement for their child and then pursue payment from the school district. *Id.* However, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985). In such a case, the parent has the burden of proving in the adversary proceeding that the IEP offered by the school district was not reasonably calculated to provide FAPE and that the parents' chosen placement was proper under the IDEA. *See Florence Cty.*, 510 U.S. at 15. Since the parents bear the burden of proof in such cases, they are the party that "loses if the evidence is closely balanced." *Schaffer v. Weast*, 546 U.S. 49, 56, 62 (2005). On the other hand, once a student accepts a private placement pursuant to an IEP, that placement becomes the "stay put" placement for the student in the event a dispute later arises about the appropriateness of a proposed IEP. *See, e.g., Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 6 (1st Cir. 1999). This means the student is entitled to remain in the "then-current educational placement" until the dispute is resolved, unless one of the parties can show that "maintaining the current placement of the child is substantially likely to result in injury to the child or others." 20 U.S.C. § 1415(j)-(k).

In addition to establishing procedures for the creation of IEPs and the resolution of disputes regarding IEPs through a formal appeal process, the IDEA provides a mechanism allowing a prevailing party to obtain reimbursement for attorney's fees and costs incurred in a proceeding under the IDEA. 20 U.S.C. § 1415(i)(3)(B). "A party 'prevails' when he achieves actual relief on the

merits of his claim that modifies the other party's behavior in a way that directly benefits him." *Doe v. Boston Pub. Sch.*, 550 F. Supp. 2d 170, 1723 (D. Mass. 2008) (citing *Farrar v. Hobby,* 506 U.S. 103, 111–12 (1992)). While "a purely technical or de minimis victory cannot confer prevailing party status," "a party may be considered 'prevailing' even without obtaining a favorable final judgment on all (or even the most crucial) of her claims." *Me. Sch. Admin. Distr.No. 35 v. Mr. and Mrs. R.,* 321 F.3d 9, 15 (1st Cir.2003). What matters is "whether the result is purely procedural or whether it actually accomplishes something substantive for the winning party." *Id.* The party seeking the attorneys' fees "bears the burden of establishing entitlement to an award." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

VI.     DISCUSSION

A.     <u>Retroactive Reimbursement</u>

Parents who unilaterally remove students from a school district placement face a heavy burden when they seek retroactive reimbursement. *Rafferty v. Cranston Pub. Sch. Comm.*, 315 F.3d 21, 26-27 (1st Cir. 2002). 15. First, they must demonstrate the offered IEP was not reasonably calculated to provide FAPE. *Id.* If, and only if, they succeed at that step, they must demonstrate the placement they selected was appropriate. *Id.* Plaintiffs argue substantial evidence did not support the BSEA's conclusion that the three challenged IEPs were reasonably calculated to provide Student with FAPE in the LRE. As a practical matter, however, the only portions of the IEPs that Plaintiffs have challenged are the placement recommendation and the transition plan. The court first addresses the transition plan deficiency and then considers the 2014-2015 IEP which proposed a placement at White Oak and the 2015-2016 and 2016-2017 IEPs which proposed placing Student in the LLP at BHS.

      i.      Significance of Transition Planning Deficiency

The Hearing Officer concluded the three challenged IEPs contained deficient transition plans but the deficiency did not prevent the IEPs from providing Student with FAPE. Observing the Student never received services under the three challenged IEPs because her family placed her at WMA, the Hearing Officer concluded Student was not harmed by deficiencies in the transition plans and the violation could be sufficiently remedied by requiring the School District to correct the deficiencies during the next Team meeting. The IDEA requires IEPs for students aged sixteen and older include "statements of transition services," though this need not be accomplished through a separate transition plan. *Lessard v. Wilton Lyndeborough Coop. Sch. Dist.*, 518 F.3d 18, 25 (1st Cir. 2008). Under Massachusetts law, transition planning must begin when a Student is fourteen. MASS. GEN. LAWS ch. 71B, § 2. Under the IDEA transition plans must identify "appropriate measurable postsecondary goals" for students and the transition services necessary to help them achieve their goals. 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa)—(bb). The hearing officer determined the transition planning for Student was insufficient because it was not tailored to help her meet her specific postsecondary goals related to attending a four-year residential school while working part-time in health care and ultimately working full-time in health care.

The court agrees there was substantial evidence in the record establishing Student's post-secondary goals and the absence of transition plans specifically tailored to help Student achieve her specific goals. However, the court also agrees that Student was not harmed by the omission. As noted by the hearing officer, Student's unilateral placement at WMA prevented her from receiving any transition services through the School District and she would not have benefitted from any additional services that could have been included if the plan was more tailored to her specific goals. Additionally, Plaintiffs have not argued, nor is there evidence supporting such an argument, that Student was indirectly harmed by the deficient transition plans because the deficiencies contributed

to the family's decision to place Student at WMA. Within the full context of this case, the BSEA's directive that the School District provide a more personalized and robust transition plan following the next Team meeting provided an adequate remedy for the transition planning violation.

 ii. 2014-2015 IEP

The School District offered two IEPs for the 2014-2015 school year. The first was offered following the Team meeting held in April of 2014 and proposed Student be placed in the LLP program within Belchertown High School. Because placement in the LLP was not discussed at the April 2014 Team meeting, the hearing officer determined the School District's proposal of an IEP with a placement in the LLP constituted a procedural violation of the IDEA. However, with respect to the question of retroactive reimbursement, the court need give no further consideration to the IEP proposed following the April 2014 IEP meeting because Plaintiffs rejected that IEP and the parties agreed to a stay-put placement at White Oak until another Team meeting could be held and a new IEP developed.[2]

After the start of the 2014-2015 school year, another Team meeting was held and the School District offered a new IEP covering the 2014-2015 school year. This IEP was accepted by Grandmother as to the services and provision of a private placement, but not as to the specific placement at White Oak. The Hearing Officer concluded that, given the information available to the Team in September of 2014, this IEP was reasonably calculated to provide Student with FAPE in the LRE. That decision was supported by testimony at the hearing from professional educators that White Oak offered a comparable curriculum to Curtis Blake and was able to offer the services set

---

[2] In the normal course, the stay-put placement would have been Curtis Blake, but because Curtis Blake was not offering a ninth grade program during the 2014-2015 school year, an alternative stay-put placement had to be identified. Plaintiffs assert they suggested two schools, Eagle Hill and Landmark School, as stay-put placements, but the record does not support that assertion. Then-counsel for Plaintiffs sent a letter to the school district requesting a stay-put placement at a private school without offering specific suggestions, other than WMA. (A.R. at 931-32; 936-37.) Plaintiffs have not identified any communication or testimony establishing that Plaintiffs ever recommended or requested any private placement other than WMA.

out in the IEP. That testimony was not contradicted, either at the Team meeting or the BSEA hearing by testimony from an educational expert, and the hearing officer found it credible. Student did testify at the BSEA hearing that she did not feel safe at White Oak, but the hearing officer concluded there was no evidence that when the IEP was proposed those concerns had been shared with the School District or White Oak. Plaintiff has not pointed to evidence in the record that conflicts with the hearing officer's conclusion as to this point. Concerns that were not known to the School District cannot be a basis for finding an IEP was not reasonable. *See Roland M.*, 910 F.2d at 992 (describing IEP as a snapshot that takes into account what was objectively reasonable in light of what the school district knew or reasonably should have known about the child at the time the IEP was promulgated).

Finally, while Student and family members expressed dissatisfaction with White Oak during the September 2014 Team meeting and the BSEA hearing, the record supports the Hearing Officer's observation that some portion of that dissatisfaction appeared attributable to Student's specific desire to attend WMA. At the time of the September 2014 Team meeting there was significant evidence that Student continued to require specialized instruction in order to make educational progress and that White Oak, but not WMA, offered an educational program would meet those needs. Having reviewed the record, the court concludes the hearing officer's determination that the 2014-2015 IEP proposed in the fall of 2014 was reasonably calculated to provide Plaintiff with FAPE was supported by substantial evidence. *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017) ("Any review of an IEP must appreciate that the question is whether the IEP is *reasonable,* not whether the court regards it as ideal.")

      iii.      2015-2016 IEP and 2016-2017 IEP

Plaintiff argues the 2015-2016 IEP and 2016-2017 IEP, both of which were drafted after Student began attending WMA, were not reasonably calculated to provide Student with FAPE because they would have moved Student from a "private day school to a partial inclusion classroom" and there was an insufficient basis for placing student in a less restrictive setting. Implicit in this argument is the erroneous assertion that all "private day schools" offer a more restrictive environment than the LLP. While private day schools like Curtis Blake and White Oak do provide a more restrictive environment than the LLP, it is not because they are private schools, but rather because they enroll only students with learning disabilities and so students are not able to interact during the school day with non-disabled peers. Private day schools like WMA, that educate students with special educational needs together with non-disabled students for all academic subjects, provide a less restrictive environment than the LLP and a significantly less restrictive environment than schools like White Oak or Curtis Blake. There also was testimony at the hearing by employees of the School District describing the LLP as providing similar instructional methods and services within the LLP to those offered at Curtis Blake. Such methods and services were part of Student's earlier IEPs and had enabled her to make adequate progress. The hearing officer credited this testimony, which was only indirectly challenged by testimony from Student and her family members based on their observations during two brief visits. Additionally, to the extent the LLP is a more restrictive placement than WMA, Student's academic difficulties at WMA supported a determination that even after Plaintiff had been placed in a less restrictive academic environment, she would benefit from a more restrictive placement that would give her access to the type of specialized instruction Plaintiff received at Curtis Blake, while still offering her opportunities to interact with non-disabled peers. The court, therefore, concludes that substantial evidence supports the hearing officer's conclusion

that the 2015-2016 IEP and 2106-2017 IEP, like the 2014-2015 IEP, was reasonably calculated to provide Student with FAPE.

Having found substantial evidence supports the hearing officer's conclusion that the IEPs offered to Student for the 2014-2015, 2015-2016, and 2016-2017 school years were reasonably calculated to provide Student with FAPE, the court grants summary judgment to the BSEA and School District with respect to Plaintiffs' claims for retroactive reimbursement and prospective payment without reaching the question of whether WMA was an appropriate placement for Student.

B. <u>Alternative Relief</u>

During the BSEA hearing process Plaintiffs sought only retroactive reimbursement and prospective payment of the cost of sending Student to WMA. The relief sought by Plaintiffs was available only if the hearing officer determined both that an IEP offered by the school distract was inadequate and the WMA placement was appropriate. Plaintiffs did not raise other claims or seek other relief. As a general rule, the role of the district court in an IDEA case is to review the decision of the hearing officer, and for this reason "issues first must be presented to the administrative hearing officer to be preserved for judicial review." *Pihl v. Mass. Dept. of Educ.*, 9 F.3d 184, 190 (1st Cir. 1993). Plaintiffs requested the same relief in their complaint, filed *pro se*, as well as an award of attorney's fees. At the hearing and in their supplemental memorandum, Plaintiffs for the first time sought an award of compensatory education to remedy the procedural violations identified by the hearing officer and additional shortcomings identified by Plaintiffs. The crux of Plaintiffs' argument is that their decision to place Student at WMA came only after a series of unilateral decisions by the School District that excluded them from the interactive process required by the IDEA and resulted in proposed placements that were inappropriate for Student. However, "compensatory education is not an appropriate remedy for a purely procedural violation of the IDEA." *Mr. and Mrs. R.*, 321 F.3d

at 19. Having failed to meet their burden of demonstrating the proposed IEPs were not reasonably calculated to provide Student with FAPE, Plaintiffs are not entitled to compensatory education.

C. Attorney's Fees

The fee-shifting provision of the IDEA empowers the court to award reasonable attorneys' fees to parents when their child is the prevailing party in an action or proceeding brought under § 1415 of the IDEA. 20 U.S.C. § 1415(i)(3)(B). The phrase "prevailing party" is "interpreted and applied in the same manner as other federal fee-shifting statutes that use the same phraseology." *Mr. and Mrs. R.*, 321 F.3d at 14. "For purposes of a federal fee-shifting statute, a prevailing party is any party who 'succeed[s] on any significant issue . . . which achieves some of the benefits plaintiffs sought in bringing suit.'" *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (alterations in original). "[P]urely technical or de minimis victory cannot confer prevailing party status"; there must be a material change to the legal relationship of the litigants in a way that directly benefits the litigant claiming to be a prevailing party. *Id.* at 14-15.

Citing the hearing officer's finding of procedural violations during the spring of 2014 and inadequate transition planning, Plaintiffs assert they are entitled to attorney's fees for the proceedings before the BSEA. As to the procedural violations from the spring of 2014, the hearing officer's decision did not materially alter the legal relationship between the parties because the hearing officer concluded the violations were cured by the fall Team meeting and revised IEP. Though the parties' legal relationship, arguably, was altered by the hearing officer's conclusion that the transition plans offered by the School District were not sufficiently detailed, that change was no more than de minimis. The transition plan deficiency had not harmed Student and could be appropriately remedied by improving subsequent transition plans before there was any chance of Student being harmed.

VII.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are hereby ALLOWED and Plaintiff's Motion for Summary Judgment is hereby DENIED. This case may now be closed.

It is So Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge